UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY OROZCO,<br><br>　　　　　Petitioner,<br><br>v.<br><br>E. SILVA, Cal Institution Gang Investigation Prison Official; M. TAMAYO, Cal Institution Gang Investigation Prison Official; L. S. MCWEN, Warden of Cal; MATTHEW CATE, Acting Director of CDCR; K. HARRIS, Attorney General of the State of California,<br><br>　　　　　Respondents. | Case No. 11cv2663-AJB (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITIONER'S REQUEST FOR STAY AND ABEYANCE**<br><br>[ECF No. 3] |

　　　　This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

　　　　On November 14, 2011, Petitioner, a state prisoner appearing *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus. ECF No. 1 ("Pet."). On the same day, Petitioner filed a request for stay and abeyance so that he may exhaust his administrative appeal process regarding a claim he believes to be meritorious and directly related to his Petition. ECF No. 3 ("Mot. Stay"). Pursuant to the Court's briefing schedule, Respondents timely filed their opposition to Petitioner's motion on December 20, 2011. ECF No. 6

1  ("Opp'n"). Petitioner timely filed his reply on January 3, 2012.[1] ECF No. 7 ("Reply").

2  The Court has considered the above documents as well as the record as a whole.
3  Based thereon, and for the reasons set forth below, the Court **RECOMMENDS** that
4  Petitioner's Motion for Stay and Abeyance be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

In his Petition, Petitioner asserts that he was erroneously validated as an associate of the Mexican Mafia prison gang. Pet. at 8. More specifically, Petitioner contends that prison officials violated his due process and fundamental liberty interest rights by: 1) failing to give him a pre-validation hearing; 2) failing to support their decision with the requisite "some evidence"; and 3) wrongfully imposing an indeterminate SHU term. Id. at 30-31. Accordingly, in his prayer for relief, Petitioner requests that his validation as an associate of the Mexican Mafia and his SHU term be canceled. Id. at 32. Petitioner also seeks restoration of "the good time credits CDCR had taken while Petitioner was placed administratively segregated (sic) for validation claims." Id.

In his Motion to Stay, Petitioner contends that on June 30, 2011, the "Calipatria (Cal) Institution Classification Committee (ICC) unexpectedly increased [his] release date." Mot. Stay at 1. Petitioner asserts that this increase was triggered by a recently enacted regulation which states that:

> An inmate who is placed in SHU, PSU, or ASU for misconduct described in subsection (c) or upon validation as a prison gang member or associate is ineligible to earn credits pursuant to section 2933 or 2933.05 during the time he or she is in the SHU, PSU, or ASU for that misconduct.

15 C.C.R. § 3043.4 (b). Petitioner states that "he hasn't engaged in any misconduct, to allow or forfeit the good time credits entirely making him do more time." Mot. Stay at 3. Accordingly, Petitioner requests that the Court stay his Petition while he exhausts his

---

[1] In determining the filing date of pleadings, *pro se* prisoners generally are entitled to the benefit of the "mailbox rule," which dictates that the statutory filing date is the date a document was presented to prison authorities for mailing to the court. See Houston v. Lack, 487 U.S. 266, 276 (1988); Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003). Here, Petitioner presented his reply to prison authorities on January 3, 2012. See Lopez v. Felker, 536 F. Supp. 2d 1154, 1155 n.1 (C.D. Cal. 2008) (utilizing petitioner's signature date as the relevant filing date).

administrative appeals regarding his extended Earliest Possible Release Date ("EPRD"). Id. at 3-4. Respondents contend that "a stay would serve no purpose and is inappropriate" because Petitioner's unexhausted claim is "plainly meritless." Opp'n at 1.

**LEGAL STANDARD**

Generally, the exhaustion of available state judicial remedies is a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings. 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275 (1971); see also Rose v. Lundy, 455 U.S. 509, 522 (1982) (explaining that a federal court may not consider a petition for habeas corpus unless the petitioner first has presented his claims to the state courts, thereby "exhausting" them). The exhaustion requirement is founded on federal-state comity, as only when the state court has been presented with the claim may it "pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (citation and internal quotation marks omitted). Thus, exhaustion of a habeas petitioner's federal claims requires that they have been "fairly presented" in each appropriate state court, including a state supreme court with powers of discretionary review, and that the petitioner "alert[] [the state] court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). If state remedies have not been exhausted as to any of the federal claims, the habeas petition typically should be dismissed. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose, 455 U.S. at 522 (requiring dismissal of petitions that contain both exhausted and unexhausted claims, commonly referred to as "mixed petitions"); see also Rhines v. Weber, 544 U.S. 269, 274-78 (2005) (confirming continued applicability of "total exhaustion" rule even after AEDPA imposed one-year statute of limitations on habeas claims).

Pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), all federal habeas petitions are subject to a one-year statute of limitations, and claims not exhausted and presented to the federal court within the one-year period are forfeited. 28 U.S.C. § 2244(d). If a petitioner presents a mixed petition, the petitioner may seek to stay the exhausted claims while he pursues the unexhausted claims in state court. Rhines, 544 U.S.

at 276-78. A petition may be stayed either under Rhines, or under Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by* Robbins v. Carey, 481 F.3d 1143 (9th Cir. 2007). See King v. Ryan, 564 F.3d 1133, 1138-41 (9th Cir. 2009).

A stay pursuant to Rhines is available only in the limited circumstances where a petitioner shows that: (1) there was good cause for the failure to have first exhausted the claims in state court; (2) the claims at issue are potentially meritorious; and (3) he has not been intentionally dilatory in pursuing the litigation. 544 U.S. at 274-78. When a petitioner demonstrates these three requirements, "it likely would be an abuse of discretion for a district court to deny a stay." Id. at 278. However, even if a petitioner had good cause for his failure to exhaust, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id. at 277.

A stay pursuant to Kelly requires compliance with the following three-step procedure: (1) the petitioner files an amended petition deleting his unexhausted claims; (2) the district court "stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims"; and (3) the petitioner subsequently amends his federal habeas petition "and re-attaches the newly-exhausted claims to the original petition." King, 564 F.3d at 1135 (citing Kelly, 315 F.3d at 1070-71). However, the petitioner is only allowed to amend his newly-exhausted claims back into his federal petition if the claims are timely under the AEDPA or "relate back" to the exhausted claims in the pending petition. Id. at 1140-43; see also Mayle v. Felix, 545 U.S. 644, 662-64 (2005).

Here, because Petitioner acknowledges that not all of his claims are exhausted, but makes no offer to withdraw the unexhausted claims, the Court interprets Petitioner's motion as a motion for a stay pursuant to Rhines.[2] See Mot. Stay at 1-4.

///

---

[2] Petitioner's assertions that his motion is made for "good cause" and without "intentional dilatory litigation tactics," as well as his citation to Rhines, further suggest that he is not seeking a stay pursuant to Kelly. Mot. Stay at 4-5.

## DISCUSSION

In his Motion to Stay, Petitioner alleges that prison officials erroneously increased his EPRD based upon a California regulation because Petitioner did not engage in any misconduct sufficient to bar him from receiving credits. Mot. Stay at 3 ("[R]ecords reflect that [Petitioner] hasn't engaged in any misconduct, to allow or forfeit the good time credits entirely making him do more time."). Respondents acknowledge that Petitioner "has a federally protected liberty interest in not having earned credits revoked through prison disciplinary proceedings without due process," but point out that Petitioner "does not have a liberty interest in whether he is entitled to credits or a certain minimum parole date under state law." Opp'n at 3. Framing Petitioner's unexhausted claim as "a state law claim that [the] CDCR has filed to apply the California Code of Regulations properly," Respondents argue that Petitioner's claim "asserts errors of state law, but fails to state a cognizable federal habeas question." Id. ("[Petitioner's] claim that CDCR is not correctly calculating his credits and his EPRD under California law does not establish a federal question."). In his Reply, Petitioner refutes Respondents' interpretation of his unexhausted claim. Reply at 3.

A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991) (citation and internal quotation marks omitted) ("We have pointed out that the Great Writ is available only where the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in state courts."). Thus, to present a cognizable federal habeas corpus claim under § 2254, a state prisoner must allege both that he is in custody pursuant to a "judgment of a State court," and that he is in custody "in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a). As the Supreme Court repeatedly has emphasized, "federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (per curiam) (citations and internal quotation marks omitted); see also Wilson v. Corcoran, 131

S. Ct. 13, 14 (2010) (per curiam) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.").

Here, it is undisputed that Petitioner is in custody pursuant to a state court judgment, so Respondents' argument turns on whether Petitioner has identified a violation of the federal Constitution, laws, or treaties. To the extent that Petitioner's unexhausted claim alleges only that CDCR officials erroneously applied state law, the Court finds that Petitioner's unexhausted claim is plainly meritless and therefore **RECOMMENDS** that Petitioner's Motion for Stay and Abeyance be **DENIED**.

Petitioner, however, asserts that he "has raised fundamental established contentions with the unexhausted issue. Specifically: U.S. Constitution - due process violation; expost fact (sic) prohibition; and cruel and unusual punishment." Mot. Stay at 3. In an abundance of caution, the Court will address these arguments in turn.

**A.  Due Process Violation**

Petitioner asserts that he was not given any notice or warning regarding the EPRD increase, and he further asserts that this increase was not triggered by "any pre-requisite unlawful acts or acts of misconduct." Mot. Stay at 1. In his administrative appeals regarding his increased EPRD, Petitioner asserts that his "due process rights under the CA and U.S. Constitutions are being violated by the current gang validation process which provides insufficient procedures to [his] private and liberty interests (release date) now at stake," and that he "was not afforded . . . due process for [his] release date to change, substantially." Mot. Stay at 15.

Although Petitioner frames the subject of his Motion to Stay as an unexhausted claim, the Court finds that the instant claim is simply a restatement of the claims in his Petition. In his Petition currently before the Court, Petitioner argues against his gang validation and his indeterminate SHU term. See Pet. at 8, 30-32. Notably, in his Motion to Stay, Petitioner states that "[t]he newly discovered issue directly stems from the validation and the SHU term [imposed upon him] . . . ." (Mot. Stay at 3), and describes his increased EPRD as "a direct and legal collateral consequence" of his gang validation and SHU term (Reply at 1).

Thus, Petitioner seemingly recognizes that his validation as a gang member led to the imposition of his indeterminate SHU term. See, e.g., Mot. Stay at 1 ("Petitioner[']s varified (sic) petition regards 3 grounds for relief, opposing and challenging CDCR labelling (sic) him a prison gang associate and thereafter placing him in the SHU."). However, Petitioner seemingly fails to recognize that the increase in his EPRD is also inextricably linked to these events, such that attacking the validity of his increased EPRD is redundant.[3] Therefore, to the extent that Petitioner's unexhausted claim alleges that CDCR officials violated his due process rights, the Court finds that this claim is duplicative of the claims in his Petition.

Regardless, as Respondents point out, "[Petitioner] does not have a liberty interest in whether he is entitled to credits or a certain minimum parole date under state law." Opp'n at 3. In fact, the Supreme Court recently reiterated that "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." Swarthout, 131 S. Ct. at 862 (citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979)); see also Cal. Penal Code § 2933(c) (West 2011) ("Credit is a privilege, not a right."). Therefore, to the extent that Petitioner's unexhausted claim alleges that CDCR officials violated his due process rights, the Court finds that this claim is plainly meritless and **RECOMMENDS** that Petitioner's Motion for Stay and Abeyance be **DENIED**.

---

[3] Petitioner's interpretation of 15 C.C.R. § 3043.4 (b) is unclear. By citing this regulation and referring to it as a "statute for inmates 'validated as prison gang member or associates (sic) and placed in a A.S.U. or S.H.U." (Mot. Stay at 1), Petitioner seems to understand that his validation as a prison gang associate triggered his placement in the SHU, which triggered his inability to earn credits. However, Petitioner also asserts that he "hasn't engaged in any misconduct, to allow or forfeit the good time credits entirely making him do more time." Mot. Stay at 3. Petitioner's contention that he has not committed any misconduct may simply be a statement refuting his status as a prison gang associate, but Petitioner's emphasis on the word "misconduct" suggests that Petitioner misinterprets 15 C.C.R. § 3043.4 (b). See Mot. Stay at 2-3 (Petitioner repeatedly puts the word "misconduct" in bold and provides the Court with the dictionary definition of "misconduct"). The regulation at issue is written in the disjunctive, such that it addresses inmates who are placed in the SHU "for misconduct described in subsection (c)" **or** "upon validation as a prison gang member or associate." 15 C.C.R. § 3043.4 (b). The regulation then states that an inmate is ineligible to earn credit during the time he is in the SHU "for that misconduct," i.e., the "misconduct described in subsection (c)" **or** the "validation as a prison gang member or associate." Id. That is, placement in the SHU upon validation as a prison gang member results in an inmate's ineligibility to earn credits; an inmate need not have committed any other additional "misconduct." See id. Accordingly, to the extent that Petitioner's unexhausted claim alleges that CDCR officials erred in validating him as a prison gang associate, the Court finds that this claim is duplicative of the claims in his Petition.

**B.      Ex Post Facto Violation**

Petitioner claims that the California regulation at issue violates the Ex Post Facto Clause because it is "being applied to [Petitioner] whose state criminal court conviction and sentencing occurred nearly 10 years before the new statute was enacted," and the new statute "extend[s] the amount of time [he] spend[s] in prison due to the inability to maintain and earn good conduct time credits." Mot. Stay at 15.

"[T]he Ex Post Facto Clause prohibits laws that retroactively increase the penalty for a crime." Moor v. Palmer, 603 F.3d 658, 663 (9th Cir. 2010) (citing Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995)). Thus, "[a] law violates the Ex Post Facto Clause if it is 1) retroactive–it applies to events occurring before its enactment; and 2) detrimental–it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Brown v. Palmateer, 379 F.3d 1089, 1093 (9th Cir. 2004) (citations and internal quotation marks omitted). Notably, the focus of the inquiry "is not on whether a legislative change produces some ambiguous sort of disadvantage, nor on whether an amendment affects a prisoner's *opportunity* to take advantage of provisions for early release." Moor, 603 F.3d at 663 (citations and internal quotation marks omitted).

Petitioner is correct that the current version of 15 C.C.R. § 3043.4 (b) was not in existence at the time of his criminal conviction, however, this regulation does not apply to the crime(s) for which Petitioner was convicted. Rather, this regulation applies to Petitioner's recent validation as a prison gang associate, an event that occurred *after* the regulation's enactment. Thus, despite Petitioner's assertions to the contrary, the state regulation at issue here was not retroactively applied to him. Moreover, the regulation at issue does not increase any criminal penalties. See Cal. Penal Code § 2933(c) (West 2011) ("Credit is a privilege, not a right. Credit must be earned and may be forfeited . . . .") Although 15 C.C.R. § 3043.4 (b) determines when Petitioner is ineligible to earn credits, this regulation does not extend the term of imprisonment to which Petitioner was originally sentenced. See 15 C.C.R. § 3043.4 (b). Accordingly, Petitioner's argument regarding the impact of 15 C.C.R. § 3043.4 (b) on his ability to earn credits does not establish the requisite

1  "retroactive" and "detrimental" effect on the duration of his confinement to constitute an ex
2  post facto violation. See, e.g., Swarthout, 131 S. Ct. at 862 ("There is no right under the
3  Federal Constitution to be conditionally released before the expiration of a valid sentence
4  . . . ."). Although Petitioner may have lost the opportunity to earn good time credits while
5  in the SHU, the effect of this, if any, on the duration of his confinement is speculative.
6  Therefore, to the extent that Petitioner's unexhausted claim alleges that the California
7  regulation at issue violates the Ex Post Facto Clause, the Court finds that this claim is plainly
8  meritless and **RECOMMENDS** that Petitioner's Motion for Stay and Abeyance be **DENIED**.

### C.    Eighth Amendment Violation

Petitioner claims that he is not a prison gang associate and that he has not committed any misconduct. Mot. Stay at 15. Petitioner therefore alleges that it is "cruel and unusual punishment to make [his] sentence more, for nothing." Id.

The Supreme Court has held that the unnecessary and wanton infliction of pain upon prisoners violates the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737 (2002). Simple placement in segregated housing, even for an indeterminate period, does not by itself constitute an Eighth Amendment violation. Toussaint v. Yockey, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984).

Petitioner contends that the increase in his EPRD violates the Eighth Amendment's prohibition on cruel and unusual punishment, but he offers no binding or persuasive authority to support his argument. Notably, even if Petitioner argued that his mere placement in the SHU constituted cruel and unusual punishment in violation of the Eighth Amendment, his argument would fail. See Toussaint, 722 F.2d at 1494 n.6 ("Even an indeterminate sentence to punitive isolation does not without more constitute cruel and unusual punishment."). Any argument regarding guaranteed early release or the loss of a parole date would be similarly unsuccessful. See Swarthout, 131 S. Ct. at 862.

Therefore, to the extent that Petitioner's unexhausted claim alleges that his placement in the SHU and/or ineligibility to earn credits violates the Eighth Amendment's prohibition on cruel and unusual punishment, the Court finds that this claim is plainly

meritless and **RECOMMENDS** that Petitioner's Motion for Stay and Abeyance be **DENIED**.

Because Petitioner's unexhausted claim is plainly meritless, or, in the alternative, duplicative of the claims in his Petition, he has not demonstrated his entitlement to a stay under Rhines. Accordingly, the Court **RECOMMENDS** that Petitioner's Motion for Stay and Abeyance be **DENIED**.

### **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying Petitioner's Motion for Stay and Abeyance.

**IT IS ORDERED** that no later than **February 21, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 12, 2012**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: January 30, 2012

BARBARA L. MAJOR
United States Magistrate Judge